UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JERRY "JK" WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:24-CV-00223-DCLC-CRW |
| ) | |
| DONALD SEYFER and NATIONAL ) | |
| AUTOMOTIVE SERVICE TASK FORCE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Amended Complaint [Doc. 23], Defendants' Memorandum of Law in Support [Doc. 24], Plaintiff's Response in Opposition [Doc. 31], and the Defendants' Reply [Doc. 34]. For the reasons herein, the Court will grant in part and deny in part Defendants' motion.

**I. BACKGROUND**

A locksmith and auto repairman living in Morristown, Tennessee, Plaintiff Jerry "JK" Walker alleges that he and Defendant Donald Seyfer "are both actors in the automotive repair industry" and are "acquaintances." [Am. Compl., Doc. 19, ¶ 3]. Mr. Walker claims that he, Mr. Seyfer, and about 150 professionals in the industry attended an exhibition in Nashville in April 2024. [*Id.* ¶¶ 5, 6]. According to Mr. Walker, he and Mr. Seyfer had a verbal altercation while Mr. Seyfer was making a presentation to the attendees at the exhibition, and Mr. Seyfer, in front of the attendees, referred to Mr. Walker as "not trustworthy." [*Id.* ¶ 6]. Mr. Walker maintains that one of the attendees posted a video of the altercation on Facebook on April 24, 2025, and that, to date, it has garnered hundreds of views. [*Id.* ¶¶ 48–49].

Then in November 2024, Mr. Seyfer, while speaking to a group of attendees at a trade show in Las Vegas, allegedly told them that Mr. Walker "steals software for a living." [*Id.* ¶ 12]. According to Mr. Walker, this group included Raushaun Patterson, the son of the chief executive officer of Trion Supercars, and Lyle Knopf, a software developer. [*Id.*]. And "within earshot" were Francisco Diez, an employee of American Airlines, Azael "Oz" Sepulveda, the owner Oz Mechanics, and Mr. Sepulveda's wife, Linda. [*Id.* at 5 n.2].

According to Mr. Walker, Mr. Seyfer engaged in a "year-long smear campaign against [him]," [*id.* ¶ 101]—a campaign that involved not only the alleged statements that he made in Nashville and Las Vegas but also efforts on his part to interfere with Mr. Walker's renewal of his credentials to work in the auto-repair industry, [*id.* ¶¶ 51–59]. Mr. Walker claims that "[t]he image of Walker painted by Seyfer—that he is a [sic] untrustworthy, a thief, a criminal, and a felon—gave a lasting false impression of Walker's professional reputation to his professional colleagues," and it "caus[ed] [him] to suffer an enduring injury to his good name and business that may take him years or a lifetime to fully restore." [*Id.* ¶ 21].

He now brings suit against Mr. Seyfer in this Court for defamation in the form of libel (Count One), defamation in the form of slander (Count Two), and intentional infliction of emotional distress (Count Three). [*Id.* ¶¶ 76–115]. He also brings suit against Mr. Seyfer's employer, Defendant National Automatic Service Task Force ("NASTF"), under the doctrine of respondeat superior (Count Four), alleging that Mr. Seyfer was "acting in the course of and within the scope of his employment" with NASTF when he defamed Mr. Walker. [*Id.* ¶ 119].

Mr. Seyfer and NASTF now move for dismissal of Mr. Walker's claims. Mr. Walker opposes their motion. Having carefully considered the parties' arguments, the Court is now prepared to rule on the motion.

## II. Legal Standard

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.* When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's allegations as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

## III. Analysis

Mr. Seyfer and NASTF raise manifold arguments for the dismissal of Mr. Walker's claims, ranging from untimeliness under the applicable statute of limitations to failure to state a plausible claim for relief. The Court will now proceed with these arguments on a claim-by-claim basis, as Mr. Seyfer and NASTF have done in their memorandum of law.

### A. Count One: Libel against Mr. Seyfer

Mr. Walker claims that Mr. Seyfer's alleged statement that he is "not trustworthy" constitutes libel. [Am. Compl. ¶¶ 79, 92]. In Tennessee, the tort of defamation can take either

3

the form of libel or slander, and "[a] libel action involves written defamation and a slander action involves spoken defamation." *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994). Apart from this distinction—written versus spoken—libel and slander are distinct in another way: the lengths of their statutes of limitations. For libel, the statute of limitations is one year "after the cause of action accrued," Tenn. Code Ann. § 28-3-104(a)(1), and for slander, the statute of limitations is six months "after the words are uttered," *id.* § 28-3-103.

Mr. Seyfer argues that Mr. Walker fails to state a plausible claim for libel because his statement—i.e., that Mr. Walker is not trustworthy—was "spoken, not written," [Defs.' Mem. at 9], and he contends that, as a claim for slander, it is untimely under the six-month statute of limitations, [*id.* at 8–9]. Mr. Walker does indeed allege that Mr. Seyfer's statement was spoken and not written, *see* [Am. Compl. ¶¶ 6, 33, 44, 79], and he concedes that if this "statement is construed simply as slander, then [it] is time-barred," but he argues that "oral communications may be transformed into libel when reduced to writing *or a more permanent form*," [Pl.'s Resp. at 12 (emphasis added)].

Whether in the form of libel or slander, the tort of defamation requires a plaintiff to allege sufficient facts showing that a defendant (1) published a statement with (2) knowledge that it is false and defamatory to the plaintiff, or (3) with reckless disregard for the statement's truth, or with negligence in failing to ascertain its truth. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999).[1] The first element—publication of a statement, and more particularly, the medium of the publication for the statement—is the landscape for the parties' dispute in this case. No one doubts that a defamatory oral statement that is later published in

---

[1] The requisite state of mind depends on the identity of the plaintiff, i.e., whether he is a public or private figure. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 645 (Tenn. 2001).

writing can constitute libel. *See Burkhart v. Randles*, 1994 Tenn. App. LEXIS 3194, at *9 (Tenn. Ct. App. Oct. 3, 1984) ("A publication of a libel may be made by an oral communication that is intended to be, and is, reduced to writing . . . . The same is true . . . when a statement is given orally to a newspaper reporter and is published in the paper." (alterations in original) (quotation omitted)). But under this case's facts, what about a defamatory oral statement later published in electronic form, like a video?

The issue before the Court, therefore, is whether an alleged oral defamatory statement, when later published online as a video, constitutes a plausible claim for libel under Tennessee law. Both parties agree that no Tennessee court has directly addressed this issue. *See* [Pl.'s Resp. at 12 ("[T]here is not a Tennessee case squarely on point[.]"); Defs.' Reply at 1 ("[N]o Tennessee court has held that a third party posting a video of an oral statement converts the statement into libel.")]. When the Tennessee Supreme Court has not addressed an issue, this Court, to resolve the issue, "must predict how [the Tennessee Supreme Court] would rule by looking to all the available data," which "include[s] the decisional law of the state's lower courts." *Faber v. Ciox Health, LLC*, 944 F.3d 593, 601 (6th Cir. 2019) (second alteration in original) (quotations omitted).

Having reviewed the Tennessee courts' jurisprudence and libel's history as a cause of action in Tennessee, the Court is convinced that a claim for libel is plausible not only when an alleged oral defamatory statement is converted to writing but also when it is published through a medium that, like a writing, is sufficiently permanent. "Libel was criminal in its origin" in Tennessee, *Quality Auto Parts*, 876 S.W.2d at 821 (quotation omitted), and it was "the greater wrong" than slander because a person acts with "deliberate malignity" by "reducing the offensive [oral statement] to writing," *id.* (quotation omitted). But as the Tennessee Court of Appeals has

5

recognized, the conversion of an oral defamatory statement to a permanent form that resembles writing is equally malignant and, therefore, can constitute libel. *See Burkhart*, 1994 Tenn. App. LEXIS at *7–8 ("Libel consists of the publication of defamatory matter by written or printed words, by its embodiment in physical form or by any other form of communication that has *potentially harmful qualities characteristic of written or printed words*." (emphasis added) (quoting *Restatement (Second) of Torts* § 568(1)–(2) (Am. L. Inst. 1977))); *see generally Innerimages, Inc. v. Newman*, 579 S.W.3d 29, 46 (Tenn. Ct. App. 2019) ("In the absence of a controlling statute or guidance from the Supreme Court, this Court has the authority to adopt provisions of a Restatement in order to further the development of the common law in this state." (citations omitted)).

Other courts, too, have indicated that the measure for libel is the permanency of the medium through which the defamatory statement is published—and not so much the express fact it is in writing. *See Davis v. Ross*, 754 F.2d 80, 85 (2d Cir. 1985) ("[S]lander is generally considered less actionable than libel, because a written publication of a defamatory statement is *more lasting* and has the likelihood of a wider audience than an oral communication[.]" (emphasis added) (citation omitted)); *Hoffman v. Clark*, 975 N.W.2d 656, 664 (Iowa 2022) ("Libel is a defamatory statement expressed in writing *or some other fixed medium*." (emphasis added) (citation omitted)); *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978) ("[T]he written word leaves a *more permanent blot* on one's reputation[.]" (emphasis added) (quotation omitted)); *Tonini v. Cevasco*, 46 P. 103, 104 (Cal. 1896) ("[W]ritten slander is more deliberate and more malicious, more capable of circulation in distant places, and consequently more likely to be *permanently* injurious." (emphasis added) (internal quotation mark and quotation omitted)); *Too Much Media, LLC v. Hale*, 993 A.2d 845, 865 (N.J. Super. Ct. App. Div. 2010) (holding

6

that the "plaintiff's complaint states a viable cause of action in libel" after opining that "the Internet is more akin to the town crier handing out printed papers" and "unlike spoken words that evaporate, Internet postings have *permanence*" (emphasis added)); *Donovan v. Fiumara*, 114 N.C. App. 524, 535 (N.C. Ct. App. 1994) (observing that the "separate rules for libel and slander" arose because a written statement is a "*lasting memorial*" against a person's good character (emphasis added) (quotation omitted)).

In sum, the Court predicts that the Tennessee Supreme Court would likely determine that an alleged defamatory oral statement later published online as a video has the indicia of permanency that, historically, has been intrinsic to a claim for libel in Tennessee, and in other jurisdictions; that it has the same harmful characteristics of an oral statement later converted to writing; and that it suffices to sustain a claim for libel at the pleading stage. Mr. Walker has therefore alleged a plausible claim for libel under Tennessee law, and it is not barred by the six-month statute of limitations that applies to claims for slander.[2]

### B. Count Two: Slander against Mr. Seyfer

Next, in seeking dismissal of Mr. Walker's twin claim for slander, Defendants contend that Mr. Walker has failed to plead sufficient facts to support his claim. Again, whether in the form of libel or slander, defamation requires a plaintiff to allege sufficient facts showing that a defendant (1) published a statement (2) with knowledge that it is false and defamatory to the plaintiff, (3) or with reckless disregard for the statement's truth, or with negligence in failing

---

[2] While Defendants also argue that "even if posting a video could convert slander into libel, Seyfer did not do the posting," [Defs.' Mem. at 9], they fail to cite case law to support this argument, *see McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also* E.D. Tenn. L.R. 7.1(b) (providing that a party's legal brief "shall include the factual and *legal* grounds which justify the ruling sought from the Court" (emphasis added)).

to ascertain its truth. *Sullivan*, 995 S.W.2d at 571. In addition to these three elements, or as an implicit requirement within them, a plaintiff must allege that his "standing in the community and his public reputation for character has been injured *by the inaccurate statement*." *Davis v. The Tennessean*, 83 S.W.3d 125, 130 (Tenn. Ct. App. 2001) (emphasis added); *see Quality Auto Parts*, 876 S.W.2d at 820 ("The basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation." (citation omitted)).

In Defendants' view, Mr. Walker has failed to allege facts showing a link between the alleged defamatory statement—that Mr. Walker "steals software for a living," [Am. Compl. ¶ 12]—and an injury. *See* [Defs.' Mem. at 12]. In this vein, Defendants argue that Mr. Seyfer "does not allege any relationship between himself and Patterson. Nor does he provide any explanation for why an associate of American Airlines, or the owner of 'Oz Mechanics,' or his wife, Linda, would have any familiarity with a locksmith from Morristown, Tennessee, or his various business ventures." [*Id.* at 11]. Mr. Walker counters by asserting that his "allegations may be inferred as posing a serious threat to his personal and business reputation." [Pl.'s Resp. at 18].

Mr. Walker does little to forge a connection between Mr. Seyfer's alleged slanderous statement and an injury to his public reputation—a connection that, again, is obligatory. *See Davis*, 83 S.W.3d at 130 (stating that a plaintiff "*must* be able to show that his or her standing in the community and his public reputation for character has been injured *by the inaccurate statement*" (emphasis added)). Mr. Walker pleads only that Mr. Seyfer's alleged libelous *and* slanderous statements—i.e., the statements that he is "not trustworthy" *and* the statement that he "steals software for a living," [Am. Compl. ¶¶ 6, 12]—damaged his reputation *together* as

8

part of a "year-long smear campaign," [*id.* ¶ 101]. For example, Mr. Walker alleges that Mr. Seyfer's "*statements*," plural, have "[u]ndermined client confidence," "[n]egatively affected revenue streams," "[l]ed to a significant decline in paid training engagements," and "[d]eterred potential partners" from doing business with him. [*Id.* ¶ 20].

Nowhere does Mr. Walker plead, beyond mere conclusory assertions, that Mr. Seyfer's alleged slanderous statement—that he steals software for a living—individually damaged his reputation, and nowhere does he plead how this statement individually damaged his reputation. His allegations of slander therefore cannot support a standalone claim for defamation. *Quality Auto Parts*, 876 S.W.2d at 820; *Davis*, 83 S.W.3d at 130. And making his claim even more dubious, he maintains that Mr. Seyfer's alleged statements "*possibly* irreparably injur[ed]" his reputation. [Am. Compl. ¶ 13 (emphasis added)]. An allegation that a defendant possibly acted unlawfully cannot sustain a claim. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)). Mr. Walker therefore fails to allege a plausible claim for slander, and Defendants are entitled to the dismissal of this claim.

### C. Count Three: Intentional Infliction of Emotional Distress

In another volley against Mr. Walker's amended complaint, Defendants next challenge his claim of intentional infliction of emotional distress. A claim of intentional inflection of emotional distress requires allegations that a defendant's conduct is (1) intentional or reckless, (2) so outrageous that a civilized society would not tolerate it, and (3) caused the plaintiff to suffer a serious mental injury. *Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 21 (Tenn. 2021). Defendants contend that Mr. Walker has not pleaded sufficient facts to establish the second element of outrageous conduct. Although Mr. Walker asserts otherwise, "[t]he burden for a

plaintiff to demonstrate outrageous conduct is a high burden indeed." *Id.* He does not meet this high burden.

At the pleading stage, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* (alteration in original) (quotation omitted). Outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (quotation omitted). In fact, tortious, malicious, and even criminal conduct do not necessarily constitute outrageous conduct, and neither does conduct that would entitle a plaintiff to recover punitive damages. *Lemon*, 618 S.W.3d at 21. To qualify as outrageous, conduct must be "so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quotation omitted).

None of the conduct that Mr. Walker complains of constitutes outrageous conduct. Mr. Seyfer's alleged statement that Mr. Walker is "not truthful" is not outrageous conduct. *See id.* (stating that "mere insults" and "indignities" do not constitute outrageous conduct). Mr. Seyfer's alleged statement that Mr. Walker "steals software for a living" is not outrageous conduct. *See id.* at 21–22 (holding that the defendant's accusation that the plaintiff committed child abuse did not constitute outrageous conduct). And though Mr. Walker asserts that Mr. Seyfer "black-balled" him from the auto-repair industry and interfered with his renewal of his credentials to work in that industry, [Pl.'s Resp. at 24], that too is not outrageous conduct. *See id.* (holding that the defendant's efforts to deter the community from associating with the plaintiff did not constitute outrageous conduct). Mr. Walker therefore fails to allege a plausible claim for

10

intentional infliction of emotional distress, and Defendants are entitled to the dismissal of this claim.

### D. Count Four: Respondeat Superior

Lastly, Defendants request the dismissal of Mr. Walker's claim for liability under the doctrine of respondeat superior,[3] arguing that "because Plaintiff's substantive claims fail as a matter of law, his respondeat superior claim fails as well." [Defs.' Mem. at 14]. Mr. Walker's claim for libel, however, has survived dismissal, for the reasons that the Court has already articulated. Because this substantiative claim remains intact, so too must Mr. Walker's claim for liability under the doctrine of respondeat superior.

## IV. CONCLUSION

Defendant's motion to dismiss [Doc. 23] is **GRANTED in part** and **DENIED in part**, and Mr. Walker's claim for slander (Count Two) and his claim for intentional infliction of emotional distress (Count Three) are hereby **DISMISSED**. Defendants are **ORDERED** to serve a responsive pleading within twenty-one days of this Order's date.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

---

[3] The doctrine of respondeat superior binds a principal to its agent's tortious conduct when it exercises sufficient control over the agent's conduct, or in other words, when the agent is "acting in the business of" the principal. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002) (quotation omitted); *see Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998) ("One who is vicariously liable is held to be financially responsible for the tortious actions of another, even though the vicariously liable party was not negligent." (citation omitted)); *Pryor Brown Transfer Co. v. Gibson*, 290 S.W. 33, 36 (Tenn. 1926) ("[R]espondeat superior is founded on the principle that he who expects to derive advantage from an act which is done by another for him must answer for any injury which another may sustain from it." (quotation omitted)).